In the Matter of **CALPA PRODUCTS COMPANY, Bankrupt.**

**No. 27804.**

United States District Court
E. D. Pennsylvania.

March 5, 1965.

William T. Adis, Philadelphia, Pa., for claimants.

Peter P. Zion and Herbert N. Shenkin, Philadelphia, Pa., for objecting creditor.

LUONGO, District Judge.

Before me are petitions to review orders of the Referee in Bankruptcy allowing two claims, but subordinating them to the claims of all other creditors. A creditor, joined by the Trustee, objects to the allowance of the claims. The claimants object to their subordination.

In 1923, the predecessor of the bankrupt was founded as a sole proprietorship by decedent, Paul C. Calissi. Thereafter the sole proprietorship became a partnership between Calissi and trustees for his two minor sons. In 1949, the business

was incorporated and stock was issued to Calissi and to the trustees for his sons. In 1955, Paul C. Calissi died, leaving his estate, including the stock in the corporation, to his widow, Louise (named executrix under the will), to his son, Paul A. Calissi, and to his two stepsons, Robert and Raymond Corsini.

At the time of his death, decedent was the owner [1] of real estate at 5420 Pascall Avenue in Philadelphia where the business of the bankrupt had evidently been conducted since 1952. These premises formed part of the estate left by Calissi to the persons above-named.

After decedent's death, his widow, son, and stepsons continued to operate the business with declining fortune until finally an involuntary petition in bankruptcy was filed against the corporation on May 15, 1963.

Louise C. Calissi, as executrix of the estate of Paul C. Calissi, filed with the Referee in Bankruptcy a general or unsecured proof of claim (Claim No. 77) in the amount of $54,919.79 for loans made to the bankrupt by decedent during his lifetime and by his estate after his death. These loans were allegedly evidenced by a promissory note.

Paul A. Calissi, Robert Corsini, Raymond Corsini, and Louise C. Calissi, as owners of the real estate above-mentioned, filed a proof of claim (Claim No. 76) for rent, asserting priority for three months' rent totalling $2,400 and a general claim for the balance of rent due in the amount of $5,771.26. The claim for rent was pursuant to an alleged written lease.

A creditor, joined by the Trustee, objected to the allowance of these two claims, contending they had not been properly proved. Claimants, on the other hand, seek review of the Referee's order subordinating [2] the claims to those of all other general creditors.

### I. *Proof of the Claims.*

To be entitled to share in the distribution of a bankrupt estate, a claim must be provable under § 63 of the Bankruptcy Act (11 U.S.C.A. § 103); actually filed and proved under § 57 (11 U.S.C.A. § 93); and allowed under § 2 (11 U.S.C.A. § 11). Where claims are based on written instruments, those instruments must be attached to the claim or " * * * [i]f such instrument is lost or destroyed, a statement of such fact and of the circumstances of such loss or destruction [must] be filed under oath with the claim." § 57, sub. b (11 U.S.C.A. § 93, sub. b).

In the instant case, both the lease and the promissory note upon which the claims were based were destroyed by a fire in the office of claimants' attorney. Affidavits setting forth the circumstances of the loss or destruction of those instruments were duly filed by claimants' attorney. Notwithstanding the affidavits, the Referee ruled that the claims were not self-supporting and additional evidence was adduced by the claimants.

### A. *Claim No. 77.*

■ The claim of the executrix for $54,919.79 representing loans to the bankrupt was sufficiently proved. In addition to the proof of claim and the accompanying affidavit hereinabove referred to, there was testimony by Paul A. Calissi that such loans were in fact made, and audit reports prepared by bankrupt's accountants reflected all such loans.

■ The argument that claim No. 77 was not proved is based in large measure upon the fact that an Account of Adjudication filed by the executrix, Louise C. Calissi, in the Orphans' Court of Delaware County, contained no reference to the loans. This evidence was before the Referee for his consideration. In determining that the disputed claim was satisfactorily proved, he obviously resolved the

---

1. Neither the date of purchase nor the date of occupancy of the real estate appears in the record. The 1952 date appears in claimants' brief and is nowhere contradicted.

2. For distinction between proof of claim and allowance or subordination of claim see 3 COLLIER, BANKRUPTCY, ¶ 57.-02, at 120–22 (14th ed. 1964).

disputed testimony in favor of the claimants. There is support for his determination and the law in that regard is clear:

"* * * if there is reasonable basis in the record for a referee's ultimate finding of fact a reviewing court cannot reverse it and substitute its own ultimate fact-finding simply because it regards its view as effecting a more desirable result than that reached by the referee." Matter of Arbycraft Co., 288 F.2d 553, 556–557 (3d Cir. 1961)

Applying that principle, claim No. 77 was established.

### B. *Claim No. 76.*

█ The claim of Paul A. Calissi, Robert Corsini, Raymond Corsini, and Louise C. Calissi for rent was also sufficiently proved. In addition to the proof of claim itself and the accompanying affidavit explaining the destruction of the written lease, it is uncontradicted that the decedent and thereafter the claimants were the owners of the property in which the corprate bankrupt conducted its business. Those circumstances furnished sufficient corroboration that a lease agreement in fact had been entered into. There is no evidence to the contrary.

Claim No. 76 has been duly established.

### II. *Subordination.*

After a claim has been proved, bankruptcy courts have the power either to allow, disallow, or subordinate it depending on the circumstances. § 2, sub. a(2) of the Bankruptcy Act (11 U.S.C.A. § 11, sub. a(2)); Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939).

█ Here the Referee concluded that, although the contested claims had been proved, the circumstances required that they be subordinated to all other claims. That determination lacks adequate support in this record and the matter will, therefore, be remanded to the Referee to take additional testimony and to make additional findings under appropriate principles of law.

█ There are no hard and fast rules for determining under precisely what circumstances claims should be subordinated, but there are certain helpful guidelines. A sufficient reason for subordinating a claim "* * * may be simply the violation of rules of fair play and good conscience by the claimant * * *." Pepper v. Litton, supra, at 310, 60 S.Ct. at 247. Implicit in that is the requirement that the claimant be guilty of at least some inequitable conduct.

In this case the Referee accorded undue weight to the fact that claimants were the only stockholders of the bankrupt corporation. In doing so, he seems to have relied on In re V. Loewer's Gambrinus Brewery Co., 167 F.2d 318 (2d Cir. 1948), which does hold that "relationship" alone between claimant and bankrupt is sufficient to justify subordination, but that case was all but overruled by Gannett Co., Inc. v. Larry, 221 F.2d 269, 51 A.L.R.2d 980 (2d Cir. 1955). In Gannett the court stated that "* * * the strict rule of In re V. Loewer's Gambrinus Brewery Co., * * * cannot stand," and referred to Comstock v. Group of Institutional Investors, 335 U.S. 211, 68 S.Ct. 1454, 92 L.Ed. 1911 (1948) wherein the Supreme Court indicated that, absent a showing of some inequitable conduct, a claim by a parent corporation against its bankrupt subsidiary ought to be allowed. To the same effect is Spach v. Bryant, 309 F.2d 886 (5th Cir. 1962), in which the court noted that "* * * such a relationship does not ipso facto invalidate an honest, bona fide debt." Id. at 889.

In view of the foregoing, unless there is support for a finding of inequitable conduct beyond mere relationship between claimant and bankrupt, the subordination of the claims cannot stand. The Referee did refer to certain other factors as justifying subordination. The first of these was that family control had changed from partnership form to corporate form. The change in form is irrelevant. The significant fact is family control, or relationship, which, as pointed out above, is not enough. The second thing referred to by the Referee was that the "principal asset," the real estate in which the bankrupt was housed, remained in decedent's

name, implying that a valuable asset was fraudulently withheld from the corporation at the time of its formation. There is nothing in the record to reveal when or under what circumstances the real estate was acquired. There is some testimony to the effect that when the business was incorporated all the partnership assets were turned over to the corporation in return for the issuance of the corporation's stock. There is some testimony that approximately $70,000 worth of stock (presumably for assets of equivalent value) was issued. There is nothing in this record to indicate that the real estate was part of the partnership assets. Indeed, there is an indication, from the fact that the business was located there only from and after 1952, that the real estate was not acquired until 1952, some three years after the business was acquired.[3] There is a suggestion in the Referee's findings and discussion that the real estate was an asset upon which creditors may have relied. If that is so, the record in its present state furnishes no evidentiary support for that conclusion. An opportunity should, however, be afforded to complete the record in that regard.

The final element the Referee pointed to as supporting subordination is that time after time corporate forms were disregarded. This finding was not detailed or explained in any fashion and a review of the record does not disclose any support for it. More evidence should be adduced on that score and if, indeed, corporate form or corporate forms were ignored, findings should be made additionally as to inequities effected thereby.

The Referee's determination to subordinate the claims has inadequate support in the present state of the record and the matter will be remanded to the Referee to take additional testimony and make additional findings as to whether the claims of Louise C. Calissi, executrix of the estate of Paul C. Calissi, (Claim No. 77) and of Louise C. Calissi, Paul A. Calissi, Raymond Corsini and Robert Cor-

sini (Claim No. 76) should be subordinated. Full opportunity is to be afforded to all parties in interest to adduce additional testimony bearing upon that question.

### ORDER

And now, this fifth day of March, 1965, it is

Ordered that the Orders of the Referee in Bankruptcy allowing Claims Nos. 76 and 77 are affirmed, and it is

Further ordered that the Orders of the Referee subordinating Claims Nos. 76 and 77 to those of all other creditors are set aside and the record is remanded to the Referee for further proceedings consistent with the foregoing Opinion.

This Court will retain jurisdiction.